IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re PHARMACY BENEFIT MANAGERS | : | Civil Action No. 06-1782 |
| ANTITRUST LITIGATION | : | |
| _____ | : | |
| BRADY ENTERPRISES, INC., et al. | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 03-4730 |
| MEDCO HEALTH SOLUTIONS, INC. | : | |
| Defendant. | : | |

## MEMORANDUM

C. Darnell Jones, II J.　　　　　　　　　　　　　　　　　　　April 26, 2017

### I.　Introduction

A January 18, 2017 Memorandum and Order denied the Motion for Class Certification in the lead case of this multidistrict litigation, *North Jackson Pharmacy, Inc., et al. v. Caremark RX Inc., et al*, Civil Action No. 06-4305. *See In re Pharmacy Benefit Managers Antitrust Litig.*, Civ. A. No. 06-MD-1782, ECF 283 ("the January Memorandum").[1] The January Memorandum also adjudicated the Motion to Decertify Plaintiffs' Class filed in *North Jackson Pharmacy, Inc. v. Express Scripts, Inc., et al.*, Civil Action No. 06-4114. The class certification Motion in *Brady Enterprises, Inc., et al. v. Medco Health Solutions, Inc.*, Civil Action No. 03-4730 was also considered, and based on the discussion of the issues in the other cases, it was concluded that "[b]ecause the conspiracy alleged in Brady is judged under the rule of reason, the same *Daubert*

---

[1] The background, class certification record, and the legal reasoning contained in the January Memorandum are incorporated herein by reference. Because the parties are familiar with the record and the issues presented, there is no need to repeat it at length, and any discussion of the record herein is limited to the extent necessary to explain the current ruling.

defects and substantive class certification predominance issues identified in the discussion of the Caremark Plaintiffs' rule of reason claim prevent certification of Brady Plaintiffs' claim." *Id.*, slip op. at 75.

Presently pending for decision is the Brady Plaintiffs' Motion for Reconsideration of the Court's Denial of Class Certification. *See* Civ. A. No. 06-1782, Docket Entry 285; Civ. A. No. 03-4730, Docket Entry 160. They assert that reconsideration should be granted because their theory of liability and proposed class definition are distinct from those asserted by the North Jackson Plaintiffs in Caremark. For the following reasons, the Motion for Reconsideration shall be denied.

**II.   Standard of Review**

The purpose of a motion to reconsider is "to correct manifest errors of law or fact or to present newly discovered evidence." *Bootay v. KBR, Inc.*, 437 Fed. App'x. 140, 146-47 (3d Cir. 2011) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)) *see also* Local Civ. R. 7.1(g). There are three circumstances in which a court may grant a motion for reconsideration: (1) there has been an intervening change in the law; (2) new evidence is now available that was not available when the court entered judgment; or (3) there is a need to correct a clear error of law or fact, or to prevent manifest injustice. Fed. R. Civ. P. 59(e); *Allah v. Ricci*, 532 Fed. App'x. 48, 51 (3d Cir. 2013) (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)); *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." *Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995); *Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

2

### III. Discussion

There was no error of law in the holding that rule of reason analysis applies to the Brady Plaintiffs' claim. First, the Illinois Opinion previously concluded that rule of reason review was appropriate for the type of claims asserted in the lead case and by the Brady Plaintiffs. The January Memorandum went on to note that "to the extent that Plaintiffs argue that the ruling was incorrect, we fully agree with the Illinois Opinion's reasons for determining that the conspiracy alleged between Caremark and the Plan Sponsors should be governed under the rule of reason." January Memorandum at 6 n.6. Those reasons focused on the role pharmacy benefit managers play in enhancing the efficiency of employer-provided group pharmaceutical benefits to employees by bundling services for the distribution of prescription brand-name and generic drugs, thereby providing offsetting justifications for any ancillary restraint. The Brady Plaintiffs offer no basis upon which that determination should be reconsidered.

Second, their assertion that Judge Robreno, the predecessor judge in *Bellview Drug Co. v. Advance PCS*, Civ. A. No. 03-4731, and Judge Fullam, the predecessor judge for *Brady* and the MDL, held that per se analysis should be applied to these types of antitrust claims is inaccurate. Judge Robreno determined that the Bellview Plaintiffs had alleged an antitrust injury under the pre-*Twombly/Iqbal* standard, stating only that "plaintiffs have sufficiently pled a restraint in trade resulting in 'antitrust injury' that is actionable by plaintiff under the antitrust laws." *Bellevue Drug Co. v. Advance PCS*, Civ. A. No. 03-4731, 2004 WL 724490, at *5 (E.D. Pa. Mar. 2, 2004). Additionally, he determined that the Bellview Plaintiffs had sufficiently alleged the elements of a Sherman Act Section 1 claim under the old pleading standard. He never held that per se analysis of that claim was mandated; indeed, the words "per se" were never used in the decision. Judge Fullam also never used the words "per se" with regard to the Brady Plaintiffs'

claims and stated only that "Defendants have filed motions to dismiss in this antitrust case. Most of the issues involved have recently been decided by my colleague Judge Robreno in his March 2, 2004 ruling in *Bellevue Drug Co. v. Advance PCS*, C.A. No. 03-4731 (E.D. Pa. March 2, 2004). I agree with Judge Robreno's rulings, and see no need to repeat that discussion here." *Brady Enterprises, Inc. v. Medco Health Solutions., Inc.*, Civ. A. No. 03-4730, 2004 WL 1737651, at *1 (E.D. Pa. Aug. 3, 2004). The only instance where per se analysis was mentioned was in the United States Court of Appeals for the Third Circuit's background recitation of what those district court decisions **supposedly** said. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 436 (3d Cir. 2009) (stating "In an opinion dated March 2, 2004, Judge Robreno denied AdvancePCS's motion [to dismiss], finding that the Plaintiffs suffered antitrust injury and had antitrust standing. The district court further held that the allegations of horizontal collusion were sufficient to allege both a per se violation and to state a claim for restraint of trade under the rule of reason based upon alleged price suppression.") Nothing in the Third Circuit's opinion actually stated that per se analysis should be applied in the case, and the decision itself dealt with an entirely different issue. *See id.* at 438 ("we agree with Advance PCS that Judge Fullam's order vacating Judge Robreno's orders compelling arbitration cannot stand under the law of the case doctrine.") While it is unclear upon what basis the Third Circuit characterized Judge Robreno's decision, he clearly never made such a ruling, and neither his decision, Judge Fullam's decision, nor the Third Circuit decision constitute "law of the case" that the conspiracy alleged by the Brady Plaintiffs is subject to per se treatment.

Next, the January Memorandum's description of the Brady Plaintiffs' conspiracy claim as "essentially identical" to the North Jackson Plaintiffs' "Plan Sponsor" conspiracy, while inexact, was not error. Both cases allege a horizontal price fixing conspiracy designed to lower

4

reimbursements to pharmacies by pharmaceutical benefit managers. The difference between the two is that while the North Jackson Plaintiffs sought to certify a class of independent pharmacies, the Brady Plaintiffs seek to certify broader class that includes "all pharmacies," that is, without distinction between independent and chain pharmacies. *See* ECF 75. Notably, the Brady Plaintiffs do not precisely explain in their Motion for Reconsideration how, if a more narrowly drawn class suffered from fatal predominance and typicality problems, a more widely drawn class would escape them.[2]

Finally, in discussing the Brady Plaintiffs' certification it was noted that "similar to Caremark, Plaintiffs rely on the expert reports submitted by Dr. Cowan" and thus the *Daubert* issues identified in the January Memorandum with regard to Dr. Cowan's opinions also preponderated against certifying the Brady class. *See* January Memorandum at 75. What was not discussed was the separate expert reports authored by Jeffrey J. Leitzinger, Ph.D. and submitted only with regard to the proposed class in Brady.[3] The omission provides no cause to grant reconsideration.

Like Dr. Cowan, Dr. Leitzinger fails to offer an opinion on the relevant geographic market.[4] As found in the January Memorandum, the "failure to offer an opinion on the geographic market renders the conclusion on antitrust impact unreliable." *Id.* at 40. While Dr. Leitzinger offers the opinion that the aggregation of market power in large purchasing

---

[2] While the more widely defined class includes chain pharmacies, none of the named individual-entity Plaintiffs is specifically pled to be the owner of a chain pharmacy. *See* Compl. ¶¶ 20-22. Additionally, Plaintiff Pharmacy Freedom Fund is specifically identified as an organization of independent community pharmacy owners. *Id.* ¶ 24. Plaintiff National Community Pharmacists Association is identified as representing community pharmacists. *Id.* ¶ 25. The Brady Plaintiffs did not acknowledge this distinction in their original certification submission. *See* ECF 24 at 9, 14-15, 17. The lack of a named plaintiff identified as a chain pharmacy raises additional Rule 23(a) typicality and adequacy issues barring certification.

[3] The Brady and North Jackson Plaintiffs filed a "Joint Response" to Defendants' Supplemental Memorandum of Law that attached Dr. Cowan's declaration as an exhibit but did not attach the declaration of Dr. Leitzinger. The Brady and North Jackson Plaintiffs jointly asserted only that "Dr. Leitzinger's declaration submitted in support of class certification in Brady . . . conflicts not at all with Dr. Cowan's analysis." (ECF 149 at 10.)

[4] Dr. Leitzinger does opine that it "seems likely" that the relevant product market will be determined to be pharmaceutical dispensing services. Leitzinger Report at 8-9; *see also* Leitzinger Rebuttal Report at 19.

organizations has been widely recognized by economists, and he reviews Medco's market share data, his assertion that its market share "would indicate a substantial portion of the market is affected by the horizontal combination that Medco has created" is mere conjecture unsupported by specific analysis of the relevant geographic and product markets. His contention that Medco's market share "data would certainly be consistent with a firm that has created and exercised a growing degree of market power over time" asserts a correlation not a causation and does not provide a basis upon which a finding of market power may be determined under the preponderance standard to show a predominating common question. Also, like Drs. Cowan and Seguin, Dr. Leitzinger assumed antitrust impact from price fixing had occurred and endeavored only to calculate the resulting damages. *See* Leitzinger Report at 14 (stating that if the allegation of a horizontal price fixing conspiracy "is correct, all (or most) all class members will have suffered antitrust impact, at the very least with respect to their servicing of prescriptions under the standard networks." (parenthetical in original)). Thus, similar to the expert evidence discussed previously, there has been no actual evidence, common or otherwise, offered on the basic issue of whether a price fixing conspiracy existed and the antitrust impact resulting therefrom.

On the issue of whether damages may be demonstrated using evidence that is common to the class, Dr. Leitzinger proposes to study Medco's "internal analyses of the price benefits of their buying power." Leitzinger Report at 17. He opines that he "would expect the damages analysis to involve first an estimate of the average pharmacy underpayment associated with the terms of Medco's standard pharmacy networks. . . . I would then expect that underpayment amounts — either in absolute terms or as a percentage amount — for the standard networks could be applied to prescriptions dispensed under Medco's custom networks." *Id.* at 18. This

methodology, which does not even specify the elements of a regression model, suffers from the additional defect that it does not attempt to isolate only the price effects of illegal conduct alleged in the Complaint. Also, like the expert testimony previously discussed, Dr. Leitzinger does not discount (1) distinctions between pharmacies, (2) legitimate, locally explained factors creating differentials in reimbursements (like market concentration and bargaining power), or (3) possible deviations between class members.

Accordingly, Plaintiffs' Motion for Reconsideration of the Court's Denial of Class Certification shall be denied. An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

_____
C. Darnell Jones, II J.